STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, *v.* VIRGINIA DIFFERDING *et al.*, Defendants-Appellants.

First District (4th Division) No. 62622

Opinion filed February 10, 1977.

Loren B. Siegel, of Boehm and Weinstein, Chartered, of Chicago, for appellant Eugene Panici.

John T. Kennedy, of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a declaratory judgment by the circuit court of Cook County rendered in favor of State Farm, whereby State Farm sought to determine whether or not liability coverage is extended to Miss Differding.

The issues presented for review are (1) whether Miss Differding qualified for insurance coverage, as a resident of the Differding household; (2) whether the automobile driven by Miss Differding qualifies as a nonowned automobile under her family's policies of insurance; and (3) whether Miss Differding used the automobile beyond the scope of the permission of the owner, thereby precluding coverage under the State Farm policies.

The automobile which Miss Differding was driving at the time of the accident was owned by a third party (Yip Lieng, a Vietnamese citizen teaching at Northern Illinois University) who carried public liability insurance of $10,000 per person, $20,000 per accident. This amount is agreed between the parties to be the primary coverage. On the date of the accident, Miss Differding's family had three policies of auto insurance in effect for its three vehicles, with State Farm as insurer. Eugene Panici brought suit against Miss Differding, who tendered the defense of her claim under the nonowned automobile coverage provisions of her family's automobile policies. State Farm then instituted the case at bar in order to declare Miss Differding did not come within this coverage. The defendant, Eugene Panici, brings this appeal in an effort to establish the State Farm policies as secondary insurance.

In 1972, Miss Differding was attending Northern Illinois University on a post-graduate basis. While at the University, she would rent various apartments to live in as her needs arose and her choice of locations varied. During her enrollment at Northern she maintained a permanent residence

with her mother and father at 8 Oak Lane, Park Forest, Illinois. She used this address on various personal documents to denote her permanent home. These items include her Illinois driver's license, voter's registration card, library card, checking account, income tax statements and student activities fees receipt from Northern. Throughout her attendance at Northern she would regularly return to Park Forest on weekends, semester breaks and school vacations.

In the summer of 1972, Miss Differding sublet an apartment at 631 Lucinda, DeKalb, Illinois from Yip Lieng, for the sole purpose of attending summer school at Northern. The period of this subtenancy was to run from June 1, 1972, until the end of the summer school term, which was the first week in August of 1972. However, she stayed beyond the subtenancy because she was able to find part-time work at a convention for a few weeks after the summer school session. Miss Differding and her roommate paid no rent during this additional stay in the apartment.

As part of the agreement to sublet, it was understood between Yip Lieng, Miss Differding and her roommate, Joan Luzbetak, that Mr. Lieng would leave certain items of personal property in the apartment which both Miss Differding and Joan agreed to care for. In addition, Yip Lieng left his auto in the parking space provided with the apartment. Although Miss Differding's bicycle was her primary means of transportation, Yip Lieng requested her to maintain his auto in the City of DeKalb, Illinois, in order to prevent its deterioration, and he specifically limited her usage of the car in two respects. Due to the vehicle's poor brakes, it was only to be used in the DeKalb area, and it was only to be used for the summer. Since Joan did not have a driver's license Miss Differding was primarily entrusted with the auto. She had the only keys to the car. Nobody drove it from June to August except Miss Differding. She had gas and oil put in it, and took it to the gas station to have the brakes checked. After examination, the gas station mechanic said the brakes were all right, at least for the time being.

On August 18, 1972, Miss Differding was driving Yip Lieng's auto from DeKalb to 8 Oak Lane, Park Forest. As she was making a left turn in front of Eugene Panici's motorcycle, she struck him and caused severe injuries, one of which resulted in the amputation of his right leg below the knee.

In each of the three Differding family auto insurance policies, coverage was provided for use of nonowned autos. The clause, standard in most policies, and contained in each of the Differding family policies, provided coverage as follows:

"USE OF NON-OWNED AUTOMOBILES

If the named insured * * * owns a motor vehicle covered by this policy * * * such insurance as is afforded by this policy with

respect to the owned motor vehicle * * * applies to the use of a non-owned automobile by:

(a) the first person named in the declarations or,

(b) if a resident of the same household, his spouse or the relatives of either * * *."

Under the Differding family policies in order to qualify for coverage in the use of a nonowned auto, it would be necessary for Miss Differding to be a resident of the Differding household. Each policy defines the term:

"Resident or Reside — * * * (as) bodily presence in such household and an intention to continue to dwell therein. However, the named insured's unmarried and unemancipated children, while away from his household attending school, are deemed to be residents of his household."

In determining whether Miss Differding is covered under this section of the policies, the question becomes whether she was emancipated.

■■ What constitutes an emancipation is a question of law, but whether there has been an emancipation is a question of fact. (*Iroquois Iron Co. v. Industrial Com.* (1920), 294 Ill. 106, 128 N.E.2d 289, 12 A.L.R. 924.) State Farm argues both issues, urging Miss Differding had reached the age of majority and was therefore emancipated as a matter of law, along with claiming she was in fact emancipated and not a resident of the Differding household.

As to the question of emancipation as a matter of law, the Supreme Court of New Jersey, citing common law cases including *Rex v. Roach* (1795), 101 Eng. Rep. 536, 6 T. R. 248, concluded it is a general rule, and always has been so, that attaining the age of 21 years is not ipso facto emancipation of the child from his or her father, although at that age a child may emancipate himself by separating from his father. *Overseers of the Poor of Alexandria v. Overseers of the Poor of Bethlehem.* (1837), 16 N.J.L. (1 Har.) 119, 123.

The Illinois Supreme Court has never rendered an opinion on whether all children reaching majority are emancipated. In *Waldron v. Waldron* (1973), 13 Ill. App. 3d 964, 968, 301 N.E.2d 167, 171, while recognizing the age of majority in Illinois as being 18 years of age, the appellate court (5th District) held an 18-year-old child was not emancipated and the father's obligation to pay support under a divorce decree therefore did not end.

The absence of a definitive ruling by the Illinois Supreme Court along with the appellate court opinion in *Waldron* and sister state opinions indicate the meaning of the term "unemancipated," as used in the policies of insurance, may include those who have attained the age of majority.

■■ Insurers write the policies and if the language of the contract has a dual interpretation they must be charged with the ambiguity. (*Johnson v.*

*Equitable Life Assurance Society of the United States* (7th Cir. 1960), 275 F.2d 315.) State Farm could have cleared any ambiguity by using the description "unemancipated minor children" rather than "unemancipated children," in defining those who are deemed to be residents of the insured's household, but did not do so and now must be charged with the ambiguity.

Even without the rule of construction in favor of insured persons and against insurance companies the same result would be reached. Along with the Illinois appellate court in *Waldron* the Illinois legislature recognizes parental rights and duties as to children who have reached the age of majority. By State statute the county circuit court may order payments for support of a child whether of minor or majority age. (Ill. Rev. Stat. 1973, ch. 40, pars. 14, 19.) The law in Illinois is in accord with the common law and the common understanding of the term. The test is not the age of the child but whether there is an entire surrender of the right to care, custody and earnings of such child as well as a renunciation of parental duties.

Regarding the question of fact as to whether Miss Differding was unemancipated, numerous circumstances must be examined. By definition, within the insurance contracts, "unmarried and unemancipated children, while away * * * attending school, are deemed to be residents * * *." It is uncontroverted that Miss Differding was unmarried and was away attending school. Most importantly, there is ample proof Miss Differding maintained a permanent residence with her family in Park Forest during her entire enrollment at Northern. She used her Park Forest address on her driver's license, voter's registration card, library card, checking account and income tax statements, and she regularly returned to her family residence on weekends, vacations and semester breaks.

■■ After considering the entire record, we hold Miss Differding was in fact unemancipated and qualifies for insurance coverage as a resident of the Differding household.

The next question presented is whether the auto driven by Miss Differding qualifies as a nonowned auto under her family's policies of insurance.

The policy definition of the term "non-owned automobile" is set forth as:

" * * * an automobile, trailer or detachable living quarters unit, not
(1) owned by,
(2) registered in the name of, or
(3) furnished or available for the frequent or regular use of
the named insured, his spouse, or any relative of either residing in

the same household, other than a temporary substitute automobile."

The court below, in granting judgment in favor of State Farm, specifically held the auto of Yip Lieng was furnished or available for the frequent and regular use of Miss Differding. Miss Differding, and Mr. Panici, claim this holding is contrary to the manifest weight of the evidence.

Generally, under the Differding family policies, the insured is covered while using a nonowned vehicle. Only when one turns to the definitions section of the policies is it discovered that an auto "furnished or available for the frequent or regular use of the insured" is not considered a "non-owned automobile." In addition, in order to determine whether coverage applies, one must interpret the terms "frequent or regular." These terms denote indefinite time spans, more than two in number, and, in relation to specific factual situations, require factual determinations to be made. Because the terms "frequent or regular" are somewhat vague, a factual determination of coverage by an interpretation of the terms, often is honestly disputed. As noted above in *Johnson,* generally ambiguity in an insurance contract should be resolved in favor of the insured.

In examining whether the holding below was contrary to the manifest weight of the evidence, a line of opinions in the area of insurance law, along with *Johnson,* must be considered. Construction of an insurance contract should be in favor of the insured or the beneficiary, and against the insurer. (*Sheffer v. Suburban Casualty Co.* (1958), 18 Ill. App. 2d 43, 151 N.E.2d 429.) The courts will construe a contract of insurance liberally in order to effectuate its purpose and avoid a forfeiture (*Lenkutis v. New York Life* (1939), 301 Ill. App. 358, aff'd, 374 Ill. 136, 28 N.E.2d 86). And, the fundamental law of construction of insurance contracts is that all uncertainty shall be resolved in favor of the insured. *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 312 N.E.2d 247.

Yip Lieng asked Miss Differding to maintain his auto in order to prevent its deterioration, and he specifically limited her use of the auto due to its poor brakes.

■■ Whether an automobile is furnished by another to an insured for his regular use may reasonably depend on the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for regular use. One furnished for a limited period of time and strictly for local use could hardly be said to have been furnished for regular use at a time and when it was being used for long-distance travel. See generally *Schoenknect v. Prairie State Farmers Insurance Association* (1960), 27 Ill. App. 2d 83, 169 N.E.2d 148.

■■ The auto in question was available for regular use only in the

DeKalb area. Miss Differding's use of the car at the time of the accident was not in the DeKalb area. She was on an irregular and somewhat isolated use. Therefore, the exclusion clause, to the effect that the policy does not cover an auto furnished to Miss Differding for her frequent and regular use, is not applicable. The use Miss Differding made of the car clearly was so infrequent and casual that such use cannot be considered as furnished for her frequently or regularly within the meaning of the policies. The lower court's holding in this regard is contrary to the weight of the evidence, and it is the duty of this court to reverse. Ill. Rev. Stat. 1973, ch. 110A, par. 366.

Lastly, State Farm claims Miss Differding's use of the auto at the time of the accident was beyond the scope of the permission of the owner, and therefore coverage should be forfeited.

■■ ■ Under the Differding family policies, immediately after the section which provides nonowned auto coverage for family members residing with the insured, the following is provided as a limitation:

"PROVIDED SUCH USE, OPERATION OR OCCUPANCY IS WITH THE PERMISSION OF THE OWNER OR PERSON IN LAWFUL POSSESSION OF SUCH AUTOMOBILE AND IS WITHIN THE SCOPE OF SUCH PERMISSION."

Simply put, this section eliminates coverage in the event the car involved was being operated by the insured without the owner's knowledge, permission or consent. Of course, consent may be expressed or implied.

Yip Lieng instructed Miss Differding not to use the car outside the DeKalb area because of the car's poor brakes. The specific limitation of permission relating to the brakes (*i.e.,* use only in the DeKalb area) implies the scope of the limitation would be somewhat different were it not for the questionable condition of the brakes. Since Miss Differding had the brakes checked and found them to be in working order, her operation of the vehicle at the time of the accident does not alter her status as a valid permittee of the auto. Consequently, the nonowned auto section of the Differding family policies provides coverage to her, and the exclusion does not apply.

For the foregoing reasons the judgment of the Circuit Court of Cook County is hereby reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and LINN, JJ., concur.