THE CINCINNATI INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. JEFFREY ARGUBRIGHT, Defendant-Appellee (James Carretto *et al.*, Defendants; Economy Fire and Casualty Company, Counterplaintiff–Cross-Appellant; and The Cincinnati Insurance Company *et al.*, Counterdefendants).

Third District    No. 3—86—0076

Opinion filed December 31, 1986.

Gary R. Eiten, of Herbolsheimer, Lannon, Henson, Duncan & Reagan, of La Salle (T. Donald Henson, of counsel), for appellant.

. Louis L. Bertrand, of Anthony C. Raccuglia & Associates, of Peru (Anthony C. Raccuglia, of counsel), for appellee Jeffrey Argubright.

Boyle, Goldsmith & Shore, of Hennepin, for cross-appellant Economy Fire and Casualty Company.

JUSTICE HEIPLE delivered the opinion of the court:

In an underlying action that gave rise to the present dispute, Jeffrey Argubright filed a complaint against the defendant, James Carretto, alleging that Carretto negligently discharged a firearm on April 17, 1983, so that a bullet struck and injured Argubright. A recovery of money damages for that injury is sought by Argubright from the defendant.

On the date of the occurrence alleged in the complaint, the defendant's parents, Peter and Anna Carretto, had in full force and effect three liability insurance policies. The first policy was issued to them by the plaintiff herein, The Cincinnati Insurance Company, insuring a home located at 8 Oaklane, Ottawa, Illinois. Economy Fire and Casualty Company issued the second and third policies, one of which insured a business and apartment located at 750 North Columbia Avenue, Oglesby, Illinois, and the other being an estate-protector umbrella liability policy. The only policy which concerns us here is that one issued by the plaintiff, The Cincinnati Insurance Company.

The plaintiff filed the instant suit seeking a declaratory judgment that it is not obligated to defend the defendant or pay any judgment entered against him in the underlying lawsuit brought by Argubright for the reason that at the time of the occurrence complained of, the defendant was not an insured within the meaning of his parents' policy. That policy provides:

" '[I]nsured' means you and the following residents of your household:
a. Your spouse;
b. Your relatives;
c. Any person in the care of you or an insured spouse or relatives."

The facts surrounding this controversy are as follows. In 1974,

Peter and Anna Carretto purchased a business at 750 North Columbia Avenue, Oglesby, Illinois known as the Garzanelli Restaurant. The Carretto family moved into a four-bedroom apartment above the restaurant and began running the restaurant as a family establishment. The defendant began working at Garzanelli's when it was purchased and continues to work there today. On the date of the occurrence complained of, the defendant was a co-manager of the restaurant.

The facts further showed that Mr. and Mrs. Carretto intended to slowly get out of the restaurant business and settle in Ottawa, Illinois. In furtherance of these plans, Mr. and Mrs. Carretto purchased a home in Ottawa in 1978, at 8 Oaklane Avenue, and sometime after 1980 began using that home as a residence. Mr. and Mrs. Carretto and the defendant all state that on the date of the occurrence complained of, they maintained dual residences, one being the Oglesby apartment and the other being the Ottawa home. They state that the Oglesby apartment is used during the times that the restaurant business is being conducted and the Ottawa home is used on days off. The restaurant is open Wednesday through Sunday, and during business hours, either the defendant or his brother Charles manage the restaurant. The defendant and his brother often spend working nights at the apartment. Mr. and Mrs. Carretto likewise spend many nights each week at the Oglesby apartment, depending on the demands of the restaurant business.

The apartment above the restaurant has four bedrooms and is fully equipped with furniture owned by Mr. and Mrs. Carretto. The defendant has his own bedroom at the apartment in which he keeps clothes and a stereo. The Ottawa home has two bedrooms, one for Mr. and Mrs. Carretto and the other for the defendant and his brother Charles to share. The defendant also keeps clothes at the Ottawa residence, along with a snowmobile which he owns. The defendant receives mail at both locations. The Ottawa address is used on the defendant's driver's license, whereas the Oglesby address is used on the defendant's voter's registration card, income tax returns, automobile insurance policy, and membership rosters of the Elks and Knights of Columbus.

After discovery was had in this matter, the trial court granted Argubright's motion for summary judgment, stating:

"1. There exists no genuine issue as to the following material facts:

A. On the 17th day of April, 1983, James Carretto was a member of the household of Peter Carretto and Anna Carretto.

B. On the aforesaid date, Peter Carretto, Anna Carretto and

James Carretto maintained dual residences at 750 North Columbia Avenue, Oglesby, Illinois, and 8 Oaklane, Ottawa, Illinois.

C. James Carretto was an insured as defined by the three policies of insurance sought to be construed herein, one having been issued by the Cincinnati Insurance Company, a Stock Company, and the other two policies issued by Economy Fire and Casualty Company."

The plaintiff appeals on two grounds: (1) the trial court erred in granting summary judgment since there were genuine issues of material fact, and (2) the trial court erred in determining as a matter of law that the defendant was a resident of 8 Oaklane Avenue, Ottawa, Illinois at the time of the occurrence alleged in the complaint.

We first consider the plaintiff's argument that the trial court was presented with material, disputed issues of fact, and therefore erred in granting summary judgment. The standard governing the determination of motions for summary judgment is set forth in the Illinois Code of Civil Procedure:

"The judgment sought shall be rendered without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).)

Supreme Court Rule 191(a) provides:

"Affidavits *** in opposition to a motion for summary judgment under section 2—1005 of the Code of Civil Procedure *** shall set forth with particularity the facts upon which the *** defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. Rev. Stat. 1985, ch. 110A, par. 191(a).

The plaintiff argues that there was a material, disputed fact concerning the defendant's statement that he spent his days off at the Ottawa home. In support of this argument, the plaintiff points to an uncertified and unsworn to report of an insurance investigator attached to its response to the motion for summary judgment. Within this report is the hearsay statement of an unnamed neighbor of the Oglesby apartment that the defendant lives in the apartment at the supper club and is usually there even on the days the restaurant is

closed. This hearsay statement did not create a material, disputed fact since it could not be considered by the trial judge. The trial judge can only consider the pleadings, depositions, admissions, and affidavits on file. The alleged statement does not fall within any of these categories.

■ The plaintiff next argues that the defendant could not have resided at the Ottawa household because the house only had two bedrooms and the defendant often had to sleep on the couch when he stayed overnight there. This allegation amounts to no more than a conclusion of fact unsupported by the uncontradicted deposition testimony of the defendant on this point, which went as follows:

"Q. Did you have your own bedroom in Ottawa?

A. Yes.

Q. And where would [your brother] sleep?

A. It's the same room.

Q. What kind of beds did you have in there?

A. Just a queen size bed.

Q. One queen size bed?

A. (Nodding)

Q. Were there ever any nights that you and [your brother] were there at the same time?

\* \* \*

A. Probably Christmas Eve or something like that, a holiday or something.

Q. I take it it's unusual that [your brother] and you would share the same—

A. Yeah, because, you know, there's a couch. And then there's also other—we're not always in the same bed at the same time.

Q. So the bedroom in the Ottawa home is for—one of those bedrooms is for you and [your brother] to share; is that right?

A. True."

A mere allegation that a triable issue of fact exists does not create such an issue, and we will not create one here.

■ Finally, the plaintiff argues that the doubt surrounding the defendant's residence in Ottawa is augmented by the fact that on the day of the occurrence complained of the defendant was staying at the Oglesby address and that the Oglesby address appeared on many of the defendant's documents. These facts are clearly documented in the record and are not disputed. Plaintiff's conclusion that these facts create a doubt concerning the defendant's residency in Ottawa does not create a triable issue of fact.

■■ ■ We next consider the plaintiff's argument that the trial court erred in determining as a matter of law that the defendant was a resident of the household at 8 Oaklane Avenue, Ottawa, Illinois, at the time of the occurrence alleged in the complaint. Cases defining the phrase "resident of the household" have stated that the phrase has no precise meaning in the law, and thus must be construed most strongly against the insurer and liberally in favor of the insured. (*Hawkeye Security Insurance Co. v. Sanchez* (1984), 122 Ill. App. 3d 183, 460 N.E.2d 873.) Nonetheless, the phrase is not without meaning as the terms 'resident' and 'household' have been individually construed in Illinois.

Cases construing the word 'resident' have stated that the term has no fixed or exact meaning in the law but varies with the content and subject matter. In Illinois, the term is generally understood to include intent and permanency of abode in addition to mere physical presence. (*MFA Mutual Insurance Co. v. Harden* (1975), 26 Ill. App. 3d 360, 325 N.E.2d 102.) The intent of the party whose residence is in question is the controlling factor, and intent is gathered primarily from the acts of a person. (*Stein v. County Board of School Trustees* (1968), 40 Ill. 2d 477.) "A person can have only one domicile, *** however, he may have several residences." *Bastian v. Personnel Board* (1983), 108 Ill. App. 3d 672, 675, 439 N.E.2d 142, *vacated and remanded on other grounds* (1983), 98 Ill. 2d 277.

We believe that the defendant meets the definition of a resident as that term has been defined in Illinois. The defendant's physical presence manifested itself in the Ottawa home in several ways. He had a bedroom, clothes, and snowmobile in Ottawa and also received mail there. The defendant's uncontradicted testimony was that he spent equal amount of time at the Oglesby and Ottawa residences at the time of the occurrence alleged in the complaint.

■■ The defendant's intent, the controlling factor in determining residency, is evident from his actions. The defendant was not attempting to become independent or emancipated from his parents, as the appellants seem to infer. The test for emancipation is not the age of the child but whether there is an entire surrender to the right to care, custody, and earnings of such child as well as renunciation of parental duties. (*State Farm Mutual Automobile Insurance Co. v. Differding* (1977), 46 Ill. App. 3d 15, 360 N.E.2d 522, *rev'd on other grounds* (1977), 69 Ill. 2d 103.) By living in the apartment part of the time, the defendant was not surrendering his parents' care, custody, or earnings. He did not live in the apartment on his own. Rather his parents spent as many as five nights a week there, depending on business.

Mr. and Mrs. Carretto provided the defendant with rent-free furnished rooms in both Oglesby and Ottawa. Mrs. Carretto continued to cook and clean for the defendant, and he shared meals with the rest of the family on a regular basis at both locations. His earnings came from working at the family business. These facts do not indicate an emancipation or independence on the part of the defendant from his parents. Further, the defendant's parents never renounced their duties in regard to the defendant. Instead, they affirmed those duties by stating that they expected the defendant to stay with them until he married.

The final element in establishing residence is permanency of abode. Again, the defendant's parents testified that they expected the defendant to remain with them until he married. There was no indication that the defendant was planning a marriage at the time of the occurrence or that the living arrangements were temporary. The defendant had always lived in his parents' home and depended on their care. Taken together, these facts provide a sufficient basis for the trial judge to determine as a matter of law that the defendant was a 'resident' of the Ottawa home.

We next consider the cases construing the term 'household.' That term has been defined as "[a]n organized family and whatever pertains to it as a whole; a domestic establishment"; and "[a] family considered as consisting of all those who share in the privileges and duties of a common dwelling." (*Liberty National Bank v. Zimmerman* (1947), 333 Ill. App. 94, 102, 77 N.E.2d 49.) The United States Supreme Court stated, "Persons who dwell together as a family constitute a 'household.' " *Arthur v. Morgan* (1884), 112 U.S. 495, 499, 28 L. Ed. 825, 827, 5 S. Ct. 241, 243.

Applying these definitions to the case at hand, we believe that the defendant, his brother, and his parents created a household. In this somewhat unorthodox situation, the family had two dwellings because of the nature of the family business, yet that does not prevent them from being a household. Household connotes membership in a family group, not attachment to a building. Mr. and Mrs. Carretto along with the defendant and his brother composed a single domestic establishment and shared in the privileges and duties of their common dwellings in Ottawa and Oglesby. Each member of the family unit shared in the duties of running a family business and in turn, enjoyed the privilege of having a home that they could share on non-working days.

In conclusion, the trial court properly determined as a matter of law that the defendant was a 'resident' of his parents' 'household'

within the meaning of the insurance policy issued by the plaintiff and is thus entitled to coverage. For the foregoing reasons, we affirm the judgment of the circuit court of La Salle County.

Affirmed.

SCOTT, P.J., and BARRY, J., concur.