SIXTH DIVISION
September 28, 2007

No. 1-06-3069

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF J.D. | ) | |
| | ) | |
| (Glen E. Dresher, | ) | Appeal from the |
| | ) | Circuit Court of |
| Co-Guardian-Appellant; | ) | Cook County, Illinois |
| | ) | |
| Rosanne C. Dresher, | ) | No. 89 P 10253 |
| | ) | |
| Co-Guardian/Appellee; | ) | Honorable |
| | ) | Maureen Connors |
| Jean Adams, | ) | Judge Presiding. |
| | ) | |
| Guardian *Ad Litem*-Appellee). | ) | |
| | ) | |

JUSTICE JOSEPH GORDON delivered the opinion of the court:

Glen E. Dresher appeals from the circuit court's orders temporarily removing him as co-guardian of his adult disabled child, J.D. For the reasons that follow, we dismiss the appeal for lack of jurisdiction.

## I. BACKGROUND

On December 6, 1989, Glen Dresher and his former wife Rosanne C. Dresher were appointed co-guardians of the person and estate of their disabled son, J.D. J.D. turned 18 on February 17, 1990. J.D. is developmentally disabled and autistic and has been living at St. Colletta's, a residential facility in Wisconsin, for over 20 years.

Glen was convicted of attempted murder and aggravated domestic battery for striking Rosanne with his car several times in 2001. This court affirmed the attempted murder conviction and a 10-year sentence, but vacated the aggravated domestic battery conviction in our March 24,

No. 1-06-3069

2006, opinion in <u>People v. Dresher</u>, 364 Ill. App. 3d 847, 847 N.E.2d 662 (2006).

On August 10, 2006, Rosanne filed a *pro se* motion to release Glen from his guardianship rights. Counsel for Glen appeared on August 28, 2006, and the court issued an order granting Glen 21 days to respond or otherwise plead to Rosanne's motion, set a status date, and "temporarily suspended without prejudice" Glen as guardian. Glen subsequently brought a section 2-615 (735 ILCS 5/2-615 (West 2004)) motion to dismiss Rosanne's motion for failure to comply with the requirement of section 2-603(a), that "[a]ll pleadings shall contain a plain and concise statement of the pleader's cause of action." (735 ILCS 5/2-603(a) (West 2004)). Glen also brought a motion for reconsideration of the court's August 28, 2006, order.

On October 16, 2006, the court issued two orders. In the first order it stated:

"1. The aforesaid motions for reconsideration and for dismissal are granted;

2. The court, *sua sponte*, moves for the removal of Glen Dresher as guardian of [J.D.], and Glen Dresher is temporarily removed as guardian, over objection of his counsel;

3. As to paragraph 2 of this order, and concurrent order for issuance of citation, there is no just cause or reason to delay enforcement or appeal of this order."

The second order stated:

"It is hereby ordered that

1. The authority of the co-guardian, Glen Dresher, be suspended pending a hearing on a citation to remove guardian;

2

No. 1-06-3069

     2. Jean Adams, GAL [guardian *ad litem*], be directed to file a petition for citation to remove co-guardian Glen Dresher;

     3. Return date on citation be set for Dec. 13, 2006, at 10:00 a.m."

On October 25, 2006, Glen filed a notice of appeal. On appeal he argues that the circuit court erred in issuing its October 16, 2006, orders because the Probate Act of 1975 does not provide for "temporary" removal of a guardian and because the court failed to issue a citation and afford him the opportunity to respond prior to his removal as required by sections 23-2 and 23-3 of the Probate Act. 755 ILCS 5/23-2, 23-3 (West 2004). Glen claims that this court has jurisdiction to hear his appeal based on Supreme Court Rules, 301, 303, 304 and 306(a)(5).[1] 155 Ill. 2d Rs. 301, 303, 304; 166 Ill. 2d R. 306(a)(5). Jean Adams, the Guardian *ad litem* (GAL) appointed by the court after Rosanne brought her motion to remove Glen, has filed an appellee's brief contesting both the jurisdictional basis for and the merits of Glen's appeal. Additionally, the GAL brought a motion before this court to dismiss Glen's appeal for lack of jurisdiction. The parties submitted memoranda on the GAL's motion, and this court denied the motion without

---

[1]Glen does not purport to rely upon Supreme Court Rule 307 as a basis for our jurisdiction, apparently recognizing that the rule is inapplicable. Rule 307(a)(6) states that an interlocutory appeal may be taken from an order "terminating parental rights or granting, denying or revoking temporary commitment in adoption cases." 188 Ill. 2d R. 307(a)(6). Parental rights are not at issue in this case, but only those rights afforded to Glen by virtue of his appointment as co-guardian pursuant to the provisions of article 11a of the Probate Act. 755 ILCS 5/11a-1 *et seq.* (West 2004).

3

prejudice.

## II. ANALYSIS

Appellate jurisdiction is limited to review of final judgments unless an order falls within a statutory or supreme court exception. <u>Pekin Insurance Co. v. Benson</u>, 306 Ill. App. 3d 367, 375, 714 N.E.2d 559, 565 (1999). We have defined what constitutes a "final order" as follows:

> " 'An order of court which leaves a cause still pending and undecided is not a final order. [Citation.]Such an order is neither final nor appealable, despite the court's special finding that the order is final for purpose of appeal. [Citation.] Thus, the test of finality lies in the substance and not the form of the order. [Citations.]
>
> To be final and appealable, an order must dispose of the rights of the parties, either upon the entire controversy or upon some definite and separate part of it. [Citations.] A final order for the purposes of appeal must terminate the litigation between the parties so that, if affirmed, the trial court has only to proceed with the execution of the judgment. [Citations.] Such an order, therefore, will finally determine, fix, and dispose of the parties' rights as to the issues made by the suit.' " <u>Lubben v. Lubben</u>, 135 Ill. App. 3d 302, 305, 481 N.E.2d 856, 858 (1985), quoting <u>Oak Brook Bank v. Citation Cycle Co.</u>, 45 Ill. App. 3d 1053, 1057, 360 N.E.2d 458, 460-61 (1977).

Glen, apparently contending that the orders he appeals from were final orders, invokes Supreme Court Rules 301, 303 and 304 as bases for our jurisdiction over this appeal. These rules

4

No. 1-06-3069

are applicable only to final judgments. See <u>Gutenkauf v. Gutenkauf</u>, 69 Ill. App. 3d 871, 873, 387 N.E.2d 918, 920 (1979). Supreme Court Rule 301 states in part, "[e]very *final judgment* of a circuit court in a case is appealable as of right." (Emphasis added.) 155 Ill. 2d R. 301. Supreme Court Rule 303, entitled "Appeals from *Final Judgments* of the Circuit Court in Civil Cases" (emphasis added) (155 Ill. 2d R. 303), describes some of the procedural rules in filing an appeals from final orders. Similarly, Supreme Court rule 304 deals with appeals from *final judgments* that do not dispose of an entire proceeding. 155 Ill. 2d R. 304. Subsection (a) of Rule 304 requires the trial court to make a finding that its final judgment as to one party or claim should be appealable before issues as to other parties or claims are finally adjudicated:

"If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a *final judgment* as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement of appeal or both. *** In the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." (Emphasis added.) 155 Ill 2d R. 304(a).

Rule 304(b) sets out that, in certain situations, an appeal can be taken from a final judgment as to one party or claim even without a special finding from the trial court:

"The following judgments and orders are appealable without the finding

5

required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which *finally determines* a right or status of a party." (Emphasis added.) 155 Ill 2d R. 304(b).

It is clear that these rules are inapplicable in this case because the orders Glen appeals from were not final orders. The first October 16, 2006, order explicitly stated that, upon the court's own motion, Glen was "temporarily removed" from his guardianship position. The second order similarly stated that the authority of Glen as co-guardian was suspended pending a hearing on the citation. Thus, there is no question that the trial court's orders did not " 'finally determine, fix and dispose of the parties' rights' " (Lubben, 135 Ill. App. 3d at 305, 481 N.E.2d at 858, quoting Oak Brook Bank, 45 Ill. App. 3d at 1057, 360 N.E.2d at 460-61) as to the issue of Glen's guardianship because that issue was to be addressed and finally adjudicated at a hearing set for December 13, 2006.

It is likewise clear that the circuit court's orders did not fall within the ambit of Rule 304. This case did not involve a final judgment as to one of multiple parties or one of multiple claims for relief. Rather, the sole issue pending before the court was Glen's status as guardian, and that status was only temporarily revoked until a final adjudication could be made after a hearing on the citation to remove him. Although the court stated in one of its orders that there was "no just cause or reason to delay enforcement or appeal," the addition of that language did not alter the fact that the court's orders were not final as to any claim or party and were, thus, not subject to Rule 304(a). Such a finding by a trial court is not effective to transform a disposition that is not

6

final in its own right into a final judgment. See Lubben, 135 Ill. App. 3d at 305, 481 N.E.2d at 858; Gutenkauf, 69 Ill. App. 3d at 873, 387 N.E.2d at 920 ("Where an order is not appealable the trial court cannot confer appellate jurisdiction by stating in such order that there is no just reason for delaying enforcement or appeal"); Fligelman v. City of Chicago, 264 Ill. App. 3d 1035, 1038, 637 N.E.2d 1195, 1197 (1994) ("To determine the finality of an order, the court must examine its substance as opposed to its form"). In this case, the court's orders were not final because Glen's removal was only temporary and the relief to which he would be entitled if correct on the merits could still be forthcoming upon the trial court's hearing in the matter. Similarly, although Rule 304(b)(1) refers to judgments or orders entered in the administration of a guardianship, that section also explicitly requires that such judgment or order "finally determine[] a right or status of a party" – a requirement that is clearly not met here. 155 Ill. 2d R. 304(b).

Glen additionally invokes Supreme Court Rule 306(a)(5) as a basis of our jurisdiction. That rule allows appeals by petition in certain instances even where there has not been a final judgment and states in relevant part:

"A party may petition for leave to appeal to the Appellate Court from the following orders of the trial court:

* * *

(5) from interlocutory orders affecting the care and custody of *unemancipated minors*, if the appeal of such orders is not otherwise specifically provided for elsewhere in these rules." (Emphasis added.) 166 Ill. 2d R. 306(a)(5).

There is no question and Glen concedes that J.D. is currently 35 years of age, which is

well beyond the age of majority. In that regard we note that "minor" has always been defined chronologically. Black's Law Dictionary defines "minor" as "[a] term derived from the civil law, which described a person under a certain age as *less than* so many years. In most states, a person is no longer a minor after reaching the age of 18 ***." (Emphasis original.) Black's Law Dictionary at 997 (6th ed. 1990). The Mental Health and Developmental Disabilities Code defines "minor" as "a person under 18 years of age." 405 ILCS 5/1-117 (West 2004). The Juvenile Court Act of 1987 defines minor in two different sections as "a person under the age of 21 years subject to this Act." 705 ILCS 405/1-3(10), 5-105(10) (West 2004); accord In re Jaime P., 223 Ill. 2d 526, 534 (2006); accord People v. Williams, 358 Ill. App. 3d 363 (2005); see also People v. Mendoza, 342 Ill. App. 3d 195, 198-99 (2003) (citing Juvenile Court Act's definition of "minor" and stating, "Becoming 21 years old is a significant milestone in our society, and Illinois's legislative scheme reflects this"); 750 ILCS 30/3-1 (West 2004) (Emancipation of Minors Act defining "minor" as "a person 16 years of age or over, and under the age of 18 years"); State v. Taylor, 153 Conn. 72, 82, 214 A.2d 362, 368 (1962) ("Our common law *** considers a minor to be any person under the age of twenty-one"); Gamble v. Davis, 98 Ga. App. 470, 472, 106 S.E.2d 89, 90 (1958) ("A minor is one less than twenty-one years of age").

Nevertheless, despite the fact that minority is always defined in terms of person's age rather than mental condition, Glen contended in his opposition to the GAL's motion before this court to dismiss the appeal for lack of jurisdiction that J.D. can be considered an "unemancipated minor" because "prior to the age of 18 years he became disabled and [was] required to be put in a care facility in Wisconsin where he remains to this date." Accordingly, Glen maintained, "[J.D.'s]

age is not the criteria to determine whether or not he is a minor, but his failure to be able to be legally emancipated from his parents is the test." We find this argument wholly unsupportable under the clear language of Rule 306(a)(5) limiting the application of that provision to "unemancipated minors." 166 Ill. 2d R. 306(a)(5). At best, Glen's contentions involve the definition of the term "unemancipated" but ignore the further requirement of Rule 306(a)(5) that the person who is unemancipated also be a minor.

The cases Glen has cited in support of his position, State Farm Mutual Automobile Insurance Co. v. Differding, 46 Ill. App. 3d 15, 360 N.E.2d 522 (1977), *rev'd on other grounds,* 69 Ill. 2d 103 (1977), and Cincinnati Insurance Co. v. Argubright, 151 Ill. App. 3d 324, 502 N.E.2d 868 (1986), do not in any way purport to assert or imply that a person over the age of majority can be considered a minor. Rather, those cases dealt with the issue of whether the child of an insurance policy holder who was over the age of majority could be considered an emancipated *child* for purposes of insurance coverage. In this context, the difference between "child" and "minor" is significant – the former merely indicates the familial relationship between a parent and her offspring while the latter is defined by a clearly quantifiable chronology of years.

In point of fact, Differding and Argubright highlight the fact that whether a person is a minor and whether a person has been emancipated are two distinct questions subject to distinct considerations. See Differding, 46 Ill. App. 3d at 19, 360 N.E.2d at 525; Argubright, 151 Ill. App. 3d at 330, 502 N.E.2d at 872. For instance, in Differding, the issue was whether an insurance policy holder's daughter was a resident of the household where "resident" was defined as including " 'unmarried and unemancipated children.' " Differding, 46 Ill. App. 3d at 19, 360

9

No. 1-06-3069

N.E.2d at 525. The appellate court noted: "[I]t is a general rule, and always has been so, that attaining the age of 21 years is not ipso facto emancipation of the child from his or her father, although at that age a child may emancipate himself by separating from his father." Differding, 46 Ill. App. 3d at 19, 360 N.E.2d at 525. The court further cited the holding in Waldron v. Waldron, 13 Ill. App. 3d 964, 968, 301 N.E.2d 167, 171 (1973), that although the age of majority in Illinois is 18 years of age, an 18-year-old child was not emancipated and the father's obligation to pay support under a divorce decree therefore did not end. Differding, 46 Ill. App. 3d at 19, 360 N.E.2d at 525. The court then concluded that the term "unemancipated" could include those persons who have attained the age of majority. Differding, 46 Ill. App. 3d at 19, 360 N.E.2d at 525. Similarly, in Argubright, the court stated: "The test for emancipation is not the age of the child but whether there is an entire surrender to the right to care, custody, and earnings of such child as well as renunciation of parental duties." Argubright, 151 Ill. App. 3d at 330, 502 N.E.2d at 872.

Rule 306(a)(5) does not merely require that the order appealed from affect the care and custody of a person who is unemancipated; it additionally requires that the person be a minor. See 166 Ill. 2d R. 306(a)(5). It is clear that regardless of whether J.D. was ever emancipated, he is not a minor. Thus, considering, as we must, the plain and ordinary meaning of the language used in Rule 306(a)(5) (see In re Estate of Rennick, 181 Ill. 2d 395, 404-05, 692 N.E.2d 1150, 1155 (1988)), we cannot expand our jurisdiction beyond the boundaries of the rule. Even if the rationale for allowing interlocutory appeals with respect to the care and custody of unemancipated minors might also be applied with respect to the care and custody of disabled

10

adults, we cannot, on our own initiative, extend our jurisdiction to encompass disabled persons past the age of majority where Supreme Court Rule 306(a)(5) limits such jurisdiction to unemancipated minors, a class to which J.D. does not belong. The language of Rule 306(a)(5) is clear and specific and must be abided as it has been written. See In re Estate of Rennick, 181 Ill. 2d at 404-05, 692 N.E.2d at 1155 ("In interpreting a supreme court rule, we apply the same principles of construction that apply to a statute. [Citation.] *** The most reliable indicator of intent is the language used, which should be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, we must apply the language used without further aids of construction. [Citation.]").

III.  CONCLUSION

Accordingly, for all the foregoing reasons, this matter is dismissed.

Dismissed.

McNULTY and O'MALLEY, JJ., concur.