UNITED STATES FIRE INSURANCE COMPANY, Plaintiff, *v.* MONSERRATE CRUZ et al., Defendants.

Supreme Court, Special and Trial Term, New York County, June 6, 1962.

Prince & Loeb for plaintiff. Oberdan A. Tedeschi for Monserrate Cruz, defendant. Nardelli & Nardelli for Belen Hernandez, defendant.

IRVING H. SAYPOL, J. The action is for declaratory judgment. The issue is whether or not the female in the case is a spouse within the meaning of subdivision 3 of section 167 of the Insurance Law which reads: " No policy or contract shall be deemed to insure against any liability of an insured because of death of or injuries to his or her spouse * * * unless express provision relating specifically thereto is included in the policy." This provision was originally enacted as subdivision 3 of section 109 of the Insurance Law, at the same time as the amendment of section 57 of the Domestic Relations Law (L. 1937, ch. 669). The change in the Domestic Relations Law emancipated wives, allowing for the first time the maintenance of action by wife for wrong to her by husband or others. (Lindley v. Cusson, 22 N. Y. S. 2d 516.)

The case has been tried to the court and the facts are stipulated. The male defendant, Monserrate Cruz, while holding an automobile liability policy issued by the plaintiff, had an automobile mishap. The female defendant, Belen Hernandez Cruz, also known as Belen Hernandez, was a passenger in his automobile at that time. The admitted or undenied allegations of the complaint and the stipulated facts show that Belen claims against Monserrate for her injuries, that they have been living in an open and notorious relationship which the plaintiff characterizes in its additional brief as " permanent, calculated and undoubtedly considered normal in the minds of these defendants and their compatriots." She has borne children naming Monserrate as the father. The plaintiff calls it a common-law marriage. It is found rather to be a meretricious companionship. That is so, especially, because the fifth allegation of the complaint, that at the times in issue the defendants were husband and wife, is denied and has not been proven.

The plaintiff's argument is founded on former Chief Judge CONWAY's opinion for his unanimous court in New Amsterdam Cas. Co. v. Stecker (3 N Y 2d 1, 7-8) stressing the fraud potential of collusion between spouses as the basis for the legislative provision excluding protection in the absence of specific provision

in the policy. Going a step further, participants *flagrante delicto* have an even greater potential for fraud. Under recognized principles of statutory construction which prescribe broad and objective rather than literal interpretation of statutes, (*Matter of Capone* v. *Weaver*, 6 N Y 2d 307, 309; *Matter of Astman* v. *Kelly*, 2 N Y 2d 567, 572) " spouse " in this statute should be held to include mate, consort, and concubine and persons in a common-law relationship to effectuate the legislative intent. That it is argued is what the Legislature means. But it is reiterated, marriage has not been proven. Nor has a common-law marriage before 1933 been suggested. (Cf. *People* v. *Woltering*, 275 N. Y. 51, sending back for the retrial the question of privilege as to the common-law wife's testimony against her husband.) Presumably, that in turn would depend on such a common-law relationship consummated before April 29, 1933. Such marriages where established are recognized in this State (*People* v. *Massaro*, 288 N. Y. 211).

Spontaneous exclamations of the male defendant at the time of the injury to a bystander referring to the female defendant as " My wife!, my wife " are stipulated as having been made but their competency is attacked by objection of the female defendant. As to her, clearly they are incompetent as prejudicial to her rights under the insurance contract, rights which are recognized and thus entitled to protection (Insurance Law, § 167; *Brustein* v. *New Amsterdam Cas. Co.*, 255 N. Y. 137, 142). More directly, these utterances are rejected as to both defendants on the broader ground that they cannot support, no less establish, a valid marriage in disregard of legislative proscription.

The defendants assert that by the clear language of the statute there is nothing to interpret or construe (*Sperling* v. *Great Amer. Ind. Co.*, 7 N Y 2d 442). If application of the word spouse to any association of the sexes was the intention of the Legislature, specification was easy and it could have been plainly said. The Court of Appeals has held that marital status as of the time of the accrual of the action is determinative. An unmarried female was not a spouse until she afterwards married the insured (*Stonborough* v. *Preferred Acc. Ins. Co. of N. Y.*, 292 N. Y. 154, affg. 266 App. Div. 838, affg. 180 Misc. 339). In *Harleysville Mut. Cas. Ins. Co.* v. *Carroll* (50 Del. 67, 73) the policy included a spouse as an additional insured. (The policy in suit so provides too and also covers resident relatives in the same household.) The insured had gone to New Hampshire with his fiancee to get married. That they never got to, but cohabit they did, and thereafter they considered themselves as man

and wife. But New Hampshire law rejects common-law marriage as illegal and invalid. "An existing legal marriage, arising from lawful wedlock, is an essential element of the status of being a 'spouse' according to the legal as well as the usual and ordinary meaning of the word." In other fields like War Risk Insurance, formal and solemnized ceremonial relationships alone are recognized. (*Howard* v. *United States,* 2 F. 2d 170; *United States* v. *Robinson,* 40 F. 2d 14.)

Common-law marriage was finally abolished in this State in 1933. (L. 1933, ch. 606, eff. April 29, 1933.) The change was effected by amending the opening sentence of section 11 of the Domestic Relations Law so that instead of simply describing forms of solemnization of marriage, it was changed to say in plain and direct words that "No marriage shall be valid unless solemnized by either: * * *." There is no need for further delving, nor for straining at a gnat, nor pulling a rabbit out of a hat to make valid what the Legislature has condemned. The force of what is thus said becomes even more apparent on a consideration of those provisions of the policy to which reference has already been made providing coverage for a spouse and relatives in the household. It is doubtful that the plaintiff stands ready to afford its coverage to claims against one like this female defendant and her household relatives. If so, it breeds a hornet's nest for itself.

This is the required decision upon which there will be a declaration in favor of the defendants as they pray, establishing the obligation of the plaintiff to defend and pay if ultimately required.