MFA Mutual Insurance Company, Plaintiff-Appellee, *v.* Archie Harden *et al.,* Defendants-Appellants.—(Inter-Insurance Exchange of the Chicago Motor Club, Intervening Plaintiff-Appellant.)

(No. 73-299; )

Second District (1st Division)—March 21, 1975.

Maynard & Brassfield, of Rockford (E. E. Brassfield and Alfred W. Cowan, Jr., of counsel), for appellants.

William D. Knight, Jr., of Rockford, for appellee.

Mr. JUSTICE GUILD delivered the opinion of the court:

Plaintiff, MFA Mutual Insurance Company (hereinafter MFA), brought a declaratory judgment action to determine its liability under an automobile insurance policy. The trial court, sitting without a jury, found in favor of MFA and from this judgment defendants and intervening plaintiff appeal. The sole issue presented is whether the automobile driven by the defendant Starr Harden at the time of the collision was a nonowned automobile within the meaning of the subject insurance policy. If the automobile were a nonowned automobile, coverage exists; if the automobile were not a nonowned automobile, coverage does not exist. Resolution of this issue turns solely upon the construction of the phrase "resident of the same household" which is contained within the policy definition of a nonowned automobile.

MFA issued the instant insurance policy to defendants Archie Harden and his son, Johnny Harden, and named a certain 1964 Ford as the described vehicle. The policy extended liability coverage to the named insureds and their respective spouses with respect to both the described vehicle and nonowned automobiles. The policy defined a nonowned automobile as follows:

> " 'Non-owned automobile' means any automobile other than (a) the described automobile, or (b) an automobile owned in whole or in part by, or furnished or available for regular use of, either the named insured or any resident of the same household."

On June 29, 1971, Starr Harden, wife of the insured Johnny Harden,

was involved in the automobile collision which resulted in this suit. At that time Starr Harden was driving a 1971 Plymouth automobile which was owned by her father, defendant Bill Adams. Bill Adams did not carry public liability insurance on the Plymouth. Defendant Brigham Harden, son of Johnny and Starr Harden, was a passenger in the car driven by Starr Harden. The remaining nine defendants herein consist of Jerry E. Stringer, the driver of a 1968 Chevrolet station wagon, the other vehicle involved in the collision, and his eight passengers.

Jerry E. Stringer was the named insured on an insurance policy issued by the intervening plaintiff, Inter-Insurance Exchange of the Chicago Motor Club. This policy contained a family protection clause with uninsured motorist coverage for personal injuries in the event that Stringer's 1968 Chevrolet became involved in a collision with an uninsured motorist. The intervening plaintiff filed an intervening complaint for declaratory judgment which, in substance, sought an order finding MFA obligated to extend coverage to Starr Harden for the collision involved herein.

The testimony at trial indicated that during Easter of 1971, Bill Adams, who lived in Rockford, Illinois, visited his daughter, Starr Harden, and son-in-law, Johnny Harden, who lived in Arkansas. His son-in-law inquired about employment opportunities in Rockford and Bill Adams said they were good. Johnny Harden asked if he should come to Rockford alone or with his wife and child. Bill Adams told Johnny that he could bring his wife and child with him to Rockford and stay at the Adams' house until he could locate a job and an apartment. About a week later the Hardens came to the Adams' house in Rockford.

Johnny Harden spent the first month of their stay in search of a job. He found a job about June 1. Starr stayed home with her baby. Her father and stepmother both worked nights at a factory. The Hardens did not take their meals with the Adamses and Starr did the cooking and washing for her husband and baby. Johnny Harden never drove the Plymouth. Starr did not drive the Plymouth until after her husband had obtained a job. During their stay Starr drove the Plymouth about five times—twice to do her laundry, twice to search for an apartment and once to visit a cousin. The collision occurred while Starr was returning home from her visit with her cousin at the request of her father. On each occasion that Starr wished to use the car she had to ask for permission, and she was denied permission to use the car once or twice. She did not have a set of keys for the Plymouth.

During their stay at the Adams' the Hardens were looking for an apartment of their own. At the time of the collision, on June 29, 1971, they had not yet found a suitable apartment. Soon after the collision, on July 5, 1971, they signed an apartment lease and moved into that apart-

ment shortly thereafter. In September, 1971, the Hardens returned to their home in Arkansas and resided there at the time of trial.

For impeachment purposes, MFA introduced two statements written by an insurance adjuster and signed by Bill Adams and Starr Harden shortly after the collision. These statements tended to indicate that Bill Adams allowed Starr Harden to use the Plymouth whenever she wanted it and that she had complete freedom to use the car at any time. At trial, however, both Bill Adams and Starr Harden explained that her use of the car was limited to occasions when her father did not need the car, she needed it for a specific purpose, and that its use was always by permission only.

In determining whether the Plymouth was a nonowned automobile at the time of the collision within the meaning of the instant insurance policy, we must determine whether the Hardens were residents of the same household with Bill Adams. If we so find, then coverage under the instant insurance policy will be barred if we further find that the Plymouth was furnished or available for the regular use of Starr Harden. Coverage would also be barred under the instant policy if Johnny Harden were found to have been a resident of the same household with Bill Adams, since the Plymouth would then be an automobile owned by Bill Adams, a resident of the same household as the insured Johnny Harden, and thus not a nonowned automobile as defined therein.

Of the several authorities cited by the parties to this appeal, we find *Country Mutual Insurance Co. v. Watson* (1971), 1 Ill.App.3d 667, 274 N.E.2d 136, a decision of this court, to be determinative of the issue before us. In that case, this court was presented with the construction and application of a liability insurance policy which excluded coverage for injuries to the insured, his spouse or "residents of his household." A farmer and his wife, the defendants therein, had entered into an agreement with the Illinois Department of Children and Family Services whereby the defendants agreed to retain placement space in their home for six children. Defendants' home was to be a "temporary care facility" where the children were placed for an indeterminate period of time up to 5 months under the agreement. It was never intended that any child placed in defendant's home would remain there permanently. While doing certain farm work, one child who was staying with the defendants inflicted injury to his eye.

In construing the phrase "resident of his household," we first noted that the term "resident" has no fixed or exact meaning in the law but varies with the context and subject matter. In reviewing the numerous decisions in Illinois which have construed the term "resident," we found that the term is generally understood to include intent and permanency of abode

in addition to mere physical presence. Since the child's stay on the defendants' farm was to be temporary and since he lacked the intent to make the farm his permanent abode, we found that the boy was not a resident of defendants' household within the meaning of the exclusionary clause in the policy under consideration in that case.

■■ Like the situation in *Watson, supra,* we find that the Hardens intended to stay at the Adams' house on a temporary basis only—that is, until Johnny Harden had obtained employment and the Hardens had found a suitable apartment. In fact, Johnny Harden did find employment after about 1 month of their stay at the Adams' house and the Hardens signed an apartment lease and moved out of the Adams' house about 1 month later. There is no evidence in the record herein which supports the proposition that the Hardens intended to make the Adams' residence their permanent abode within the meaning of the exclusionary clause of the policy herein. Accordingly, we find that the Hardens were not residents of the same household with Bill Adams, and that the Plymouth was therefore a nonowned automobile within the meaning of the policy involved herein. Since Starr Harden qualified as an insured under the policy, it follows that the MFA policy covered the instant collision.

■■ We also note that the result we reach herein is consistent with the apparent purpose of the policy provision involved. That purpose would seem to be one of affording coverage for infrequent or casual use of a nonowned automobile while denying coverage where two or more automobiles are used interchangeably by members of the same household and where only one premium is paid thereon. See *Rodenkirk v. State Farm Mutual Automobile Insurance Co.* (1945), 325 Ill.App. 421, 433, 60 N.E. 2d 269, 274; *Voelker v. Travelers Indemnity Co.* (7th Cir. 1958), 260 F.2d 275. See also Annot., 83 A.L.R. 2d 926.

For the foregoing reasons, the judgment of the trial court is hereby reversed and the cause remanded for entry of an order consistent with the views expressed herein.

Reversed and remanded.

SEIDENFELD, P. J., and HALLETT, J., concur.