GERALD SYPIEN, Plaintiff-Appellant, *v.* STATE FARM MUTUAL AUTO-MOBILE INSURANCE COMPANY, Defendant-Appellee.
First District (5th Division)   No. 81—442

Opinion filed December 10, 1982.

William E. Reynolds and Bruce M. Bozich, both of Chicago, for appellant.

Victor J. Piekarski and Glen E. Amundsen, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellee.

JUSTICE MEJDA delivered the opinion of the court:
Plaintiff brought an action for declaratory judgment to establish that defendant's automobile liability insurance policy issued to plaintiff provided uninsured motorist coverage as a result of the death of Beatrice Aguirre. Defendant's motion for summary judgment was granted and plaintiff appeals. We affirm.

The issues presented are whether Maria Aguirre, mother of the minor decedent, was the "spouse" of plaintiff, and whether decedent was a "relative" as those terms are defined in the automobile insurance policy.

The facts are not in dispute. On September 22, 1979, plaintiff was

the named insured in an automobile liability insurance policy issued by defendant which provided uninsured motorist benefits to persons therein designated as "insured." The relevant portions of the policy stated that the *person* or *persons* covered by uninsured motor vehicle coverage include the named insured, "his or her *spouse*" and "their *relatives*." The words "spouse" and "relative" are therein defined as follows:

> "*Spouse* — means *your* husband or wife living with *you*." (Emphasis added.)
>
> "*Relative* — means a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you* \*\*\*." (Emphasis in text.)

On September 22, 1979, while plaintiff was residing with Maria and her minor daughter Beatrice, Beatrice was struck and killed by an automobile operated by an uninsured motorist. Plaintiff submitted a claim for uninsured motorist benefits and a demand for arbitration pursuant to the policy issued by defendant. Defendant denied the claim and demand, contending that decedent did not qualify as an insured under the policy.

Plaintiff's complaint alleged that Maria and plaintiff lived as husband and wife, that Beatrice resided with them, and that plaintiff assumed all obligations of support and care for Beatrice, acting in all respects as guardian for such minor. Defendant filed an answer and affirmative defense which denied uninsured motorist coverage to decedent. Plaintiff filed a reply. In response to defendant's request to admit facts, plaintiff stated that on September 22, 1979, plaintiff and Maria were living and consorting together as husband and wife on a permanent conjugal basis, and were for all intents and purposes married; further, that a marriage license was thereafter issued on October 25, 1979, and their marriage legally recognized and confirmed on November 3, 1979.

The trial court granted defendant's motion for summary judgment and held that Maria did not qualify as plaintiff's "spouse," finding that since Maria and plaintiff were not husband and wife on September 22, 1979, Beatrice did not qualify as a "relative" of plaintiff's spouse under the terms of the policy. Plaintiff appeals.

OPINION

Plaintiff contends that the trial court erred in holding that Maria was not the spouse of plaintiff under the terms of the policy. He urges that his cohabitation with Maria on a resident continuing conjugal basis, notwithstanding the absence of a legal marriage, should be

equated with "husband and wife" and suffice to bring Maria within the definition of "spouse." He argues that the policy does not expressly or by inference require a legal marriage nor exclude couples who hold themselves out to society as husband and wife without such marriage, nor does it refer to the Illinois statute which invalidates common law marriages after June 30, 1905 (Ill. Rev. Stat. 1981, ch. 40, par. 214) as controlling or limiting the definition of a spouse, husband or wife. Plaintiff therefore concludes that an ambiguity exists as to those definitions which should be construed in favor of the insured and against the defendant insurance company. Defendant responds that the terms are not ambiguous and that a valid and legal marriage is required.

Initially, whether an ambiguity exists in a policy is a question of law to be determined by the court. (*Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill. App. 3d 410, 407 N.E.2d 77.) The rule that insurance contracts be liberally construed in favor of the insured and strictly against the insurer applies only where the language used is ambiguous. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539; *Margie Bridals, Inc. v. Mutual Benefit Life Insurance Co.* (1978), 62 Ill. App. 3d 542, 379 N.E.2d 62.) In the absence of ambiguity, the words are to be given their plain, ordinary and popular meaning. (*Dora Township v. Indiana Insurance Co.* (1980), 78 Ill. 2d 376, 400 N.E.2d 921; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.) It is the function and duty of the court to construe the contract as made by the parties and not to make a new contract under the cloak of construction. (*Polzin v. Phoenix of Hartford Insurance Companies* (1972), 5 Ill. App. 3d 84, 283 N.E.2d 324; *Mid-Century Insurance Co. v. Safeco Insurance Co. of America* (1972), 7 Ill. App. 3d 408, 287 N.E.2d 529.) Finally, questions of the applicable coverage provided by the automobile policy can be determined only as of the time of the accident. *Allstate Insurance Co. v. Wallace* (Tex. Civ. App. 1968), 435 S.W.2d 537.

We recently held in *Sostock v. Reiss* (1980), 92 Ill. App. 3d 200, 205, 415 N.E.2d 1094, 1097, that a mere engagement to marry did not provide marital rights and that prior to a marriage ceremony, the status of husband and wife did not exist. We there observed that the Illinois Marriage and Dissolution of Marriage Act sets forth the procedure for the solemnization and registration of marriage (Ill. Rev. Stat. 1981, ch. 40, par. 101 *et seq.*) and that under the present statutory scheme, common law marriages contracted in this State after June 30, 1905, are invalid. Ill. Rev. Stat. 1981, ch. 40, par. 214.

Although no Illinois cases have been cited nor found, other ju-

risdictions have determined that the term "spouse" as used in insurance statutes and policies is not ambiguous and is defined as a legal wife or husband. We find those cases persuasive and adopt the rationale therein.

In *Menchaca v. Farmers Insurance Exchange* (1976), 59 Cal. App. 3d 117, 130 Cal. Rptr. 607, Lara, the cohabitant of the named insured Menchaca, sought recovery under the latter's uninsured motorist coverage for personal injuries sustained as a pedestrian when struck by an automobile. The policy and pertinent statute defined "insured" as including "the spouse of the named insured" and provided that the provisions be liberally construed. Lara and Menchaca lived together for several years as husband and wife without the benefit of a formal marriage ceremony. The court noted that in California the common-law marriage is not recognized and that certain conditions, including a formal ceremony, must be met before the marriage is considered "lawful." In holding that Lara was not the "spouse" of Menchaca within the meaning of the statute or the policy, the court stated that the policy of liberal construction does not require that the ordinary meaning of the term "spouse" be distorted. The court noted that the case did not concern the property rights of a meretricious couple, but rather it involved the rights of one party to the relationship under an insurance policy issued to the other party. Therefore the Family Law Act (Cal. Civ. Code secs. 4000-5138) under which a meretricious spouse has the same property rights as a putative spouse was not applicable. The court stated:

> "Certainly that third party, here [the insurer], is entitled to rely upon the usual meaning to be given the words that they have used in their standard form insurance policies. In this respect, the word 'spouse,' as used in insurance statutes and insurance policies, has been defined as follows: 'A spouse is a legal wife or husband.' (*United States v. Robinson* (5th Cir. 1930) 40 F.2d 14, 16.) 'An existing legal marriage, arising from lawful wedlock, is an essential element of the status of being a "spouse" according to the legal as well as the usual and ordinary meaning of the word. A spouse is a lawful wife or husband.' (*Harleysville Mutual Casualty Ins. Co. v. Carroll*, 50 Del. 67, [123 A.2d 128, 131]; see also *Lopez v. Santiago*, 125 N.J. Super. 268, [310 A.2d 500]; *United States Fire Insurance Company v. Cruz*, 35 Misc. 2d 272, [230 N.Y.S.2d 779]." 59 Cal. App. 3d 117, 127-28, 130 Cal. Rptr. 607, 613-14.

In *Harleysville Mutual Casualty Insurance Co. v. Carroll* (Del. Super. Ct. 1956), 123 A.2d 128, the insurer brought action for a de-

claratory judgment that the defendant Ruby was not the "spouse" of its insured within the terms of the liability coverage policy. Ruby and the insured had never engaged in a ceremonial marriage but cohabited for some six years and had been known and considered themselves as husband and wife. The court stated that "common law" or "informal" marriages are not recognized as legal and valid marriages under the law of New Hampshire which governed, and there held that an existing legal marriage is an essential element of the status of being a "spouse" according to the legal as well as the usual and ordinary meaning of the word.

In *Lopez v. Santiago* (1973), 125 N.J. Super. 268, 310 A.2d 500, Gloria, an injured passenger, was held *not* to be the spouse of the uninsured driver Renaldo and therefore not barred from recovering from New Jersey's Unsatisfied Claim and Judgment Fund. Gloria was never married to Renaldo although she bore him four children, lived with him and the children as a family, and used his name. The court there stated that the words in a statute are to be given their ordinary and well-understood meaning in the absence of special meaning, and that where the language of a statute is plain there is no need for interpretation. The court further stated:

> "The meaning of 'spouse' is clear: '*** a man or woman joined in wedlock, a married person: HUSBAND, WIFE.' Webster's Third New International Dictionary (1961), at 2208. Gloria and Renaldo were not married. Renaldo was not Gloria's 'spouse.' " 125 N.J. Super. 268, 270, 310 A.2d 500, 501.

Plaintiff also contends that section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, par. 510(b)) and its judicial interpretation in *In re Support of Halford* (1979), 70 Ill. App. 3d 609, 388 N.E.2d 1131, require that his cohabitation with Maria be accorded sufficient legal recognition so as to qualify Maria as his "spouse" herein. Section 510(b) terminates the maintenance of an ex-spouse who cohabits with another person on a resident continuing conjugal basis. *Halford* stated that it was the intention of the legislature that the section apply "whenever the spouse receiving the maintenance has entered into a husband-wife relationship with another, whether this be by legal or other means." (70 Ill. App. 3d 609, 612, 388 N.E.2d 1131, 1134.) We agree with defendant that the foregoing fail to support plaintiff's position. In *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 64, 394 N.E.2d 1204, 1210, the court stated that the legislature extended legal recognition to a class of nonmarital relationships, but only to the extent of a party's good faith belief in the existence of a valid marriage. No such belief is present in the in-

stant case. Furthermore, we are not concerned with the property rights of the cohabitants *inter se* but rather with the rights of one of them under an insurance policy issued to the other. Here the defendant insurer, a third party, is entitled to rely upon the usual meaning of the words used in its insurance policy. *Menchaca v. Farmers Insurance Exchange* (1976), 59 Cal. App. 3d 117, 128, 130 Cal. Rptr. 607, 613.

■ Plaintiff also claims that Beatrice should be considered his relative as defined in the policy. The policy provides that *"Relative—* means a person related to *you or your spouse* by blood, marriage or adoption who lives with *you."* Since Maria is not the spouse of the insured, Beatrice is not related to plaintiff by marriage. Plaintiff does not contend that Beatrice was related to him by blood or adoption but states that he raised, supported and treated her as his daughter and in effect acted as a guardian which qualifies as a legal relationship.

Plaintiff relies on *Brokenbaugh v. New Jersey Manufacturer's Insurance Co.* (1978), 158 N.J. Super. 424, 386 A.2d 433, in which the policy defined "relative" as "a person related to the *named insured* by blood, marriage, or adoption (including a ward or foster child) who is a resident of the same household as the *named insured."* The rationale of the court's holding was that the plaintiff was a "ward" and "foster child" of the insured. (See *Wood v. State Farm Mutual Automobile Insurance Co.* (1981), 178 N.J. Super. 607, 429 A.2d 1082.) No such terms are employed in the instant policy.

Plaintiff's reliance on *Hunter v. Southern Farm Bureau Casualty Insurance Co.* (1962), 241 S.C. 446, 129 S.E.2d 59, and on *Cobb v. State Security Insurance Co.* (Mo. 1979), 576 S.W.2d 726, is also misplaced. In *Hunter* the insured had a living wife but lived with the intestate as man and wife during which relationship three children were born to them. It was held that the intestate was not within the coverage of the insurance policy which excluded "any member of the family of the insured residing in the same household." The court there did not consider the terms here in issue. In *Cobb*, the insured had acknowledged that he was the biological father of the child borne by his cohabitant, and all of them lived together on a permanent basis functioning as a family notwithstanding the absence of a lawful union. Inasmuch as the child was a person related to the insured by blood and a member of his household, the court there held that the illegitimate child was entitled to coverage as a "relative" of the insured. In this case, although Beatrice was a member of the insured's household they were not related by blood.

In *Hartford Accident & Indemnity Co. v. Goossen* (1978), 84 Cal.

App. 3d 649, 148 Cal. Rptr. 784, defendant was unmarried and openly cohabiting with the insured's daughter and regarded as a member of the family. In holding that defendant was not a relative of the insured by blood, marriage or adoption, the court concluded: "Whatever the social status, under present morality, of a paramour, he is not a 'relative' within any terminology of which we are aware." 84 Cal. App. 3d 649, 654, 148 Cal. Rptr. 784, 786.

The instant question of coverage is determined only as of the date of the fatal accident of September 22, 1979, and is not affected by the subsequent marriage. We therefore hold that on the accident date Beatrice was not a "relative" of the named insured nor of his "spouse" under the terms of the policy.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and WILSON, J., concur.