HAWKEYE SECURITY INSURANCE COMPANY, Plaintiff-Appellant, *v.* SANTOS SANCHEZ *et al.*, Defendants-Appellees.

First District (5th Division)   No. 83—806

Opinion filed February 24, 1984.

Schey, Goffen and Associates, P.C., of Chicago (Howard T. Goffen, of counsel), for appellant.

David M. Zerante, of McCormick & Zerante, of Homewood, for appellees.

PRESIDING JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Hawkeye Security Insurance Company, appeals from the judgment of the trial court, entered in favor of defendants after a bench trial in this declaratory judgment action, that defendant Debbie Salinas was an "insured" under a policy of insurance issued by plaintiff to Santos and Guadalupe Sanchez. The trial court found that Debbie Salinas was both a "relative" of one of the named insureds and a "resident of the Named Insured's household" within the meaning of the insurance contract, and accordingly held that she was an "insured" as defined by the policy. Plaintiff raises three issues for review. First, plaintiff contends that the terms "relatives" and "residents of the Named Insured's household" as used in the policy are unambiguous and therefore not to be construed against plaintiff. Second, plaintiff asserts that Debbie Salinas was never legally married in Illinois and has never fulfilled the requirements for a common law marriage elsewhere and therefore is not a "relative" of either of the named insureds. Third, plaintiff argues that Debbie Salinas was not a "resident of the Named Insured's household" at the relevant time. For the reasons which follow, we reverse the order of the trial court.

The insurance contract at issue provided coverage for certain events and defined "insured" as including "if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any Insured ***." Guadalupe Sanchez testified that she and her husband, the named insureds, had contracted to purchase a house in Crete, Illinois, in late September of 1975. At that time they were living with their two children in Chicago Heights, Illinois. Noe Salinas, who is Mrs. Sanchez' brother, and Debbie Salinas were living with another brother of Mrs.

Sanchez in Steger, Illinois. Prior to September 30, 1975, Mrs. Sanchez and Debbie had discussed the possibility of Debbie, Noe and Tony, their child, moving into the Crete house while it was being remodeled. Mrs. Sanchez testified that Debbie agreed that her family would pay rent and their own utilities and would move out when the remodeling was finished so that Mrs. Sanchez' family could move into the house. Mrs. Sanchez stated that Debbie and Noe moved into the house a day or two after the closing on September 26, 1975. She later corrected this statement to say that Debbie and Noe were on the property but were only cleaning the house and pulling weeds and did not actually move in until about a week later. At this time, Mrs. Sanchez and her family were still living in Chicago Heights and Noe and Debbie were still living in Steger.

Mrs. Sanchez indicated that on September 30, 1975, a neighbor girl was allegedly bitten by a dog belonging to Debbie and Noe. This incident is the basis of the potential liability giving rise to the instant declaratory judgment action. After the alleged dog bite, Mrs. Sanchez and her family decided not to move into the house in Crete.

Debbie Salinas testified that at one time she and Noe lived at the same address as the Sanchez family but in separate apartments. On September 30, 1975, she and Noe were at the Crete house cleaning the house and yard. None of the utilities was in service at the time. She stated that they moved in about a week or 10 days later, although they did move boxes of dishes and other things in on that date. She stated that on September 30, 1975, she was still living in Steger. She confirmed Mrs. Sanchez' testimony about living in the Crete house during the remodeling. She testified that after the remodeling was completed, she believed that both families would live together in the Crete residence. She was impeached on this point with a prior statement in which she had indicated that she planned to move out of the Crete residence into her own place with Noe and Tony and that the Sanchez family would move into the Crete house.

Noe Salinas testified that on the day of the alleged dog bite he was cleaning the yard at the Crete house. He moved in about a week later. He did not remember whether the two families had intended to live together after the remodeling.

The trial testimony disclosed that Noe and Debbie have lived together for the past 10 years. Except for two brief stays in Texas, Debbie has always lived in Illinois. In 1971 a son, Tony, was born to the couple while Debbie was in Texas during a four-month stay. At this time Noe visited her in Texas for a few days and then returned to Illinois. Debbie testified that she does not usually introduce Noe as her

husband, although she probably has done so at some time. Noe testified that he does not like to refer to Debbie as his wife *because they are not "legally married."* He stated that "I call her my 'old lady.' If we were married I'd call her my wife." Mrs. Sanchez testified that Noe and Debbie have held themselves out as husband and wife and that she refers to Debbie as her sister-in-law.

On July 28, 1982, the trial court found that "Debbie Salinas is an insured within the terms and conditions of [the insurance policy] and therefore is entitled to coverage from said policy ***."

OPINION

■ The contract of insurance at issue in this case defines an "insured" as "if residents of the Named Insured's household, his spouse, the relatives of either ***." This language imposes two separate requirements, both of which must be satisfied to create coverage: first, the putative insured must be a resident of the Sanchez household and second, must be a relative of one of the named insureds.

■ In reviewing the trial court's determination that Debbie Salinas was a resident of the Sanchez household, we are guided by several general principles. As this court recently noted, questions of the applicable coverage of an insurance policy can be determined only as of the time of the accident creating the potential liability. (*Sypien v. State Farm Mutual Automobile Insurance Co.* (1982), 111 Ill. App. 3d 19, 21, 443 N.E.2d 706.) Thus, the question becomes whether Debbie Salinas was a "resident of the Named Insured's household" on September 30, 1975.

> "In construing the phrase 'resident of his household,' we first noted that the term 'resident' has no fixed or exact meaning in the law but varies with the context and subject matter. In reviewing the numerous decisions in Illinois which have construed the term 'resident,' we found that the term is generally understood to include intent and permanency of abode in addition to mere physical presence." (*MFA Mutual Insurance Co. v. Harden* (1975), 26 Ill. App. 3d 360, 363-64, 325 N.E.2d 102.)

Because the phrase "resident of [his] household" has no precise meaning we will construe it most strongly against the insurer and liberally in favor of the insured. (*Bell v. Continental Assurance Co.* (1970), 123 Ill. App. 2d 274, 278, 260 N.E.2d 114; see also Annot., 93 A.L.R.3d 420, 427 (1979).) Nonetheless, the phrase is not without meaning. One factor which has been held to characterize a resident of an insured's household is a common dwelling with the insured. (*Neidhoefer v. Automobile Insurance Co.* (7th Cir. 1950), 182 F.2d 269, 272 (collecting

cases).) " "The word "household" is variously used to designate people, generally, who live together in the same house **. [It means] "those who dwell under the same roof and compose a family; a domestic establishment." ' " (182 F.2d 269, 272.) Thus, giving the facts a most liberal interpretation, we might conclude that Debbie Salinas was a resident of the Sanchez *house* at the time of the alleged incident; however, there is no evidence indicating she ever shared living quarters with the Sanchez family. She cannot, therefore, qualify as a member of the Sanchez *household*, and it follows that even were we to assume for the purposes of decision that she was a "relative" of Mrs. Sanchez, she is not an "insured" under the policy in question. The decision of the trial court is therefore in error.

Because of our disposition of this issue, we need not discuss the other points of error raised by plaintiff. For the reasons stated, the order of the trial court entering judgment in favor of defendants is reversed.

Reversed.

SULLIVAN and WILSON, JJ., concur.