**ALLSTATE INSURANCE,**
**Plaintiff–Appellee,**

v.

**Karen J. [Kohlbeck] SHELTON, Robert G. Kohlbeck, as Co–Personal Representatives of the Estate of Brittany Ann Marie Kohlbeck, Defendants–Appellants.**

No. 95–35898.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1996.

Decided Jan. 24, 1997.

Gregory G. Silvey, Guess & Rudd, Anchorage, Alaska, for plaintiff-appellee.

Before BRUNETTI and O'SCANNLAIN, Circuit Judges; WILLIAMS,* District Judge.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether the term "relative" in an automobile insurance policy includes the child of the policyholder's unmarried cohabitant.

### I

In June 1992, Karen Kohlbeck and Michael Shelton bought a house together in Anchorage, Alaska. Karen and her four children moved in with Michael and his daughter. Michael was married to Theresa Sullivan at the time, but they were in the process of divorcing.

Approximately ten or eleven months after Karen and Michael moved in, Paul Breeding struck Karen's daughter Brittany with his car while she was riding her bicycle. Brittany died from her injuries on April 4, 1993. Two months after Brittany's death, Michael's divorce was finalized. Michael and Karen married one month later, on July 3, 1993.

Brittany's estate, co-represented by her parents Karen (Kohlbeck) Shelton and Robert Kohlbeck, filed survival and emotional distress claims against Breeding in state court. Breeding's automobile insurer, State Farm, and Karen (Kohlbeck) Shelton's automobile insurer, Fireman's Fund, filed interpleader actions. The resulting settlement allocated $674,000 among Brittany's siblings, Karen (Kohlbeck) Shelton, Robert Kohlbeck, Brittany's estate, Michael Shelton, Michael Shelton's daughter, and certain of their respective attorneys. The litigation terminated September 1, 1994.

Karen (Kohlbeck) Shelton and Robert Kohlbeck, as co-representatives of Brittany's estate ("the estate"), then asserted a claim for coverage under the uninsured/underinsured motorist provisions of an Allstate policy issued to Michael Shelton. The policy

provides coverage for Michael "and any **resident** relative."

On January 31, 1995, Allstate filed this action in district court for a declaratory judgment that it owed no obligation to Brittany under the uninsured/underinsured motorist coverage of Michael's policy. The estate moved for summary judgment declaring that the policy covered Brittany. Allstate cross-moved for summary judgment declaring that the policy did not cover Brittany. The district court denied the estate's motion and granted Allstate's motion, concluding that the term "relative" means a person connected to the insured by blood or marriage, which Brittany was not. The court then entered a declaratory judgment that Michael Shelton's Allstate policy "does not cover Brittany Ann Marie Kohlbeck as a resident relative." The estate timely appeals.

### II

■ The estate contends, as a preliminary matter, that the district court abused its discretion in hearing this case because it lacked jurisdiction under *Employers Reinsurance Corp. v. Karussos*, 65 F.3d 796, 798 (9th Cir.1995), and *American National Fire Insurance Co. v. Hungerford*, 53 F.3d 1012, 1019 (9th Cir.1995).

*Karussos* and *Hungerford* reaffirm the general rule that federal courts should "decline to assert jurisdiction in insurance coverage and other declaratory relief actions presenting only issues of state law during the pendency of parallel proceedings in state court unless there are circumstances present to warrant an exception to that rule." *Karussos*, 65 F.3d at 798 (quoting *Hungerford*, 53 F.3d at 1019) (internal quotation marks and other citation omitted).

We judge whether the district court properly assumed jurisdiction as of the time of filing. *Id.* at 800. When Allstate filed its complaint on January 31, 1995, the state tort/interpleader actions had terminated. Since no parallel proceedings were pending in state court when Allstate commenced this

---

* The Honorable Spencer M. Williams, Senior United States District Judge for the Northern District of California, sitting by designation.

action, the district court did not abuse its discretion under *Hungerford/Karussos*.

## III

■ We next turn to whether the district court properly concluded that Brittany was not a "relative" of Michael Shelton.

The uninsured/underinsured motorist coverage of Michael's Allstate policy provides in pertinent part:

> **We** will pay all damages that an insured person is legally entitled to recover from the owner or operator of an uninsured or underinsured auto because of ... **bodily injury** sustained by an insured person....

The policy defines "insured persons" as "**You** and any **resident** relative."

Under Alaska law, which both parties agree applies, we must construe the insurance contract to provide coverage that a reasonable layperson would expect:

> An insurance policy may be considered a contract of adhesion, and as such, should be construed to provide the coverage which a layperson would have reasonably expected, given a lay interpretation of the policy language.
>
> . . . .
>
> To ascertain the reasonable expectations of the parties, we look to the language of the disputed policy provisions, the language of other provisions of the insurance policy, and to relevant extrinsic evidence. In addition, we refer to case law interpreting similar provisions.

*Maynard v. State Farm Mut. Auto. Ins. Co.*, 902 P.2d 1328, 1330 (Alaska 1995) (quoting *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977)).

The estate contends that a layperson would have reasonably expected Brittany to be covered as a "relative" of Michael. "The real issue," in the estate's view, "is what constitutes a 'family.'" As "six percent (a six-fold increase since 1970) of the population consists of households where the couples are unmarried and are living with children 15 or younger," it is "unreasonable to exclude the children based upon the marital status of their parents." We are not persuaded.

Under Alaska law we begin with the policy's language: "Insured persons" are "**You** and any **resident** relative." The policy does not further define "relative." Webster's Third New International Dictionary (1986) defines "relative" as "a person connected with another by blood or affinity." "Blood" is defined as a "relationship by descent from a common ancestor." "Affinity" is defined as a "relationship by marriage (as between a husband and his wife's blood relatives)."

Brittany was connected with Michael by neither blood nor affinity. Thus, under the plain meaning of the disputed provision, she was not his "relative." In Alaska, "[w]here an insurance company limits the coverage of a policy issued by it in plain language, [the] court recognizes that restriction." *Id.* (quoting *Insurance Co. of N. Am. v. State Farm Mut. Auto. Ins. Co.*, 663 P.2d 953, 955 (Alaska 1983)).

No other provision of the insurance policy contradicts this plain meaning. For instance, the policy's liability coverage for the insured's own automobile provides an exclusion for "bodily injury to any person related to a person insured by blood, marriage, or adoption and residing in that person's household." The district court presumed that Michael Shelton would read the liability coverage and the uninsured/underinsured motorist coverage *in pari materia*. Even assuming that Michael imported this formulation of "relative"—a person connected by "blood, marriage, or adoption"—into the uninsured/underinsured motorist coverage, Brittany would not qualify.

Extrinsic evidence confirms that Michael Shelton did not reasonably expect his automobile insurance policy to cover Karen's children. He and Karen, though living together, maintained separate policies. Brittany's estate properly recovered under her mother's policy.

Finally, case law interpreting similar provisions supports the plain meaning of Michael's policy. Where insurance policies have not defined "relative,"[1] courts have ap-

---

**1.** The cases cited by the estate, in which the policy or statute at issue defined "relative" to

plied its ordinary meaning as persons connected by blood or marriage. *See, e.g., Groves v. State Farm Life and Casualty Co.,* 171 Ariz. 191, 829 P.2d 1237 (Ct.App.1992) ("In insurance cases, one not a relative by blood or marriage is not covered as a relative."); *Young v. State Farm Mut. Auto. Ins. Co.,* 67 Haw. 544, 697 P.2d 40, 41–42 (1985) (decedent was not a "relative" of the named insured because they had no legal relationship).[2]

We respectfully decline the estate's invitation to apply a strained usage of "relative" to suit its conception of modern social mores. The term's ordinary meaning requires a connection by blood or affinity, which Michael and Brittany did not share.

### IV.

For the foregoing reasons, the district court properly concluded that Brittany Ann Marie Kohlbeck was not a "relative" of Michael Shelton.

**AFFIRMED.**

---

include a "foster child," are inapposite. *See Brokenbaugh v. New Jersey Mfrs. Ins. Co.,* 158 N.J.Super. 424, 386 A.2d 433, 438 (Ct.App.Div. 1978) (claimant was *de facto* "foster" daughter of the named insured, who had reared her); *Joseph v. Utah Home Fire Ins. Co.,* 313 Or. 323, 835 P.2d 885, 888 (1992) (in banc) ("foster child" not limited to foster children placed by the state but includes child reared by person other than "biological or adoptive parent"). Michael Shelton's policy does not define "relative" to include a "foster child"; even if it did, and if Alaska courts did not limit the term to foster children placed by the state, the evidence hardly shows that Michael "reared" Brittany in the eleven months they lived together.

2. *See also Allstate Ins. Co. v. Hilsenrad,* 462 So.2d 1202, 1204 (Fla.Dist.Ct.App.1985) (general rule is "that one not a relative by blood or marriage is not covered as a relative"); *Demaio v. State Farm Mut. Auto. Ins. Co.,* 534 So.2d 1244, 1244–45 (Fla.Dist.Ct.App.1988) (dissolution of marriage not only dissolved insured's relationship to claimant's aunt as wife, but also insured's relationship by affinity to all of aunt's blood relatives, including claimant); *cf. Hartford Accident & Indemnity Co. v. Goossen,* 84 Cal.App.3d 649, 148 Cal.Rptr. 784, 786 (1978) ("Whatever the social status, under present morality, of a paramour, he is not a 'relative' within any terminology of which we are aware."); *Sypien v. State Farm Mut. Auto. Ins. Co.,* 111 Ill. App.3d 19, 66 Ill.Dec. 780, 784, 443 N.E.2d 706, 710 (1982) (same).